UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LORRIE S. NAEGELE,

                              Plaintiff,

                                                                 DECISION AND ORDER

                                                                   04-CV-6007L

                              v.

JO ANN B. BARNHART,
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

      This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that Lorrie S. Naegele ("plaintiff") is not disabled under the Social Security Act, and therefore, is not entitled to Social Security Disability Insurance ("SSDI") benefits.

      Both the Commissioner and plaintiff have moved for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). For the reasons discussed below, the Commissioner's motion (Dkt. #6) is granted, plaintiff's motion (Dkt. #4) is denied, and this action is dismissed.

## PROCEDURAL BACKGROUND

      Plaintiff was born on August 22, 1957. She is a high school graduate and has worked as a United Parcel Service driver and as a part-time receptionist. Plaintiff applied for SSDI benefits on September 13, 2000, alleging that she was disabled from April 7, 2000 through April 11, 2002, due to back and shoulder problems. Her application was denied initially and on reconsideration. After

a hearing before an administrative law judge ("ALJ"), the ALJ found that plaintiff was not disabled. The Appeals Council vacated that decision and remanded the case for further administrative proceedings. Another hearing was held before a different ALJ at which a vocational expert and a medical expert testified. In a decision dated August 27, 2003, the ALJ concluded that plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner on December 31, 2003, when the Appeals Council denied plaintiff's request for review. (T. 7-9). This action followed.

## DISCUSSION

**I.     Definition of Disability**

Under the Social Security Act ("the Act"), a person is considered disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a person "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* at § 423(d)(2)(A). To determine whether a person is disabled within the meaning of the Act, the ALJ proceeds through a five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999).

The Second Circuit has described the five-step process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform

her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada*, 167 F.3d at 774.

## II.     The ALJ's Decision

Applying the five-step disability evaluation, the ALJ first found that plaintiff had not engaged in substantial gainful activity between April 6, 2000 through July 10, 2001. Beginning July 11, 2001, and continuing through April 11, 2002, however, the ALJ concluded that plaintiff performed substantial gainful activity by working twenty hours a week as a part-time receptionist at the Geneva Town Hall. At step two, the ALJ found that plaintiff had impairments that were severe within the meaning of the regulations, including discogenic/degenerative lumbar spine with radiculopathy, left shoulder rotator cuff tear, recurrent, status post left rotator cuff repair and left shoulder acromioplasty. At step three, the ALJ determined that none of plaintiff's impairments met or equaled any of the listed impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. Although a medical expert testified that plaintiff met the requirements for Listing 1.04(C), lumbar spinal stenosis, the ALJ concluded that plaintiff did not meet the Listing because she had no problem walking and was working a part-time job. The ALJ next determined that plaintiff retained the residual functional capacity to perform sedentary work, but with several physical limitations. Citing the opinion of the vocational expert, the ALJ concluded at step four that plaintiff was not disabled because she retained the residual functional capacity to perform her past relevant work as a receptionist. (T. 18-24).

## III.    Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than

a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Thus, "[i]t is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force[,]" this Court cannot substitute its own judgment for that of the Commissioner. *Veino*, 312 F.3d at 586.

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998)("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'")(quoting *Johnson*, 817 F.2d at 986).

Plaintiff argues that the ALJ's decision is based on a number of legal errors. Specifically, plaintiff contends that the ALJ erred at step 3 when he concluded, contrary to the medical expert who testified at the hearing, that plaintiff did not meet Listing 1.04(C) for disorders of the spine. Plaintiff further argues that the ALJ erred at step 4 when assessing plaintiff's residual functional capacity because she is only capable of working part-time. Plaintiff also claims that the ALJ misapplied the regulations regarding her eligibility for a trial work period and that he improperly assessed her credibility. Plaintiff asserts that when the correct legal standards are applied the only conclusion that

- 4 -

can be drawn from the record is that she is disabled. Plaintiff, therefore, moves to remand solely for the calculation and payment of benefits.

The Commissioner argues that the ALJ's decision is not based on legal error and is supported by substantial evidence. The Commissioner contends that the ALJ is the final decision-maker concerning whether plaintiff met a particular listing. Further, the evidence in the record, including plaintiff's own testimony about her ability to walk without limitation, demonstrates that she does not meet Listing 1.04(C). Finally, the Commissioner maintains that the ALJ correctly applied the provisions of the trial work period and fairly assessed plaintiff's credibility. The Commissioner moves for judgment on the pleadings and dismissal of plaintiff's complaint.

I agree with the Commissioner and find that the ALJ applied the correct legal principles and that substantial evidence supports his conclusion that plaintiff is not disabled.

## IV.   Listing 1.04(C)

Listing 1.04(C) describes the required level of severity for spinal disorders, such as lumbar spinal stenosis, as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication,[1] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Also pertinent here is Listing 1.00B2b, regarding the inability to ambulate effectively, which states that:

> The inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is

---

[1] Pseudoclaudication, or neurogenic claudication, means intermittent limping caused by lumbar spinal stenosis. *See Stedman's Medical Dictionary* 360 (27th ed. 2000).

> defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . .
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

At the hearing, Dr. Jeremiah O'Sullivan testified as a medical expert in disability evaluation and internal medicine. He opined that plaintiff had, *inter alia*, severe arthritis in her back and "mid line disk" with stenosis at L4-L5 and L5-S1, with lumbar radiculopathy down her left leg. (T. 50-51). Dr. O'Sullivan testified that plaintiff "seemed to meet" the requirements for Listing 1.04(C). (T. 52).

The ALJ, however, did not adopt Dr. O'Sullivan's opinion and concluded that plaintiff's impairments did not meet or equal any Listing. It is well-settled that the Commissioner is solely responsible for making the determination about whether an individual meets the statutory definition of disability. *See* 20 C.F.R. § 404.1527(e)(1). In rejecting Dr. O'Sullivan's conclusion, the ALJ credited plaintiff's own testimony that walking generally does not bother her.[2] In addition, there is substantial evidence in the record that shows that, although plaintiff is mildly limited in distance and duration for walking, plaintiff is not so limited as to meet the definition of "an inability to ambulate effectively."[3] These medical opinions do not show that plaintiff has "an extreme limitation of the

---

[2] Specifically, plaintiff testified at the hearing that, "As long as it's level and not uphill, I can walk fine" and that, "Walking doesn't bother me on level ground." (T. 55, 71).

[3] For instance, Dr. Peter Capicotto opined on October 25, 2000, that plaintiff could not sit, stand or walk for longer than one to three-hour intervals. (T. 165). Dr. Steven Lasser opined that plaintiff could walk for one hour. (T. 376). Dr. George Sirotenko found that her gait was normal, that she could walk on her heels and toes, that she could walk on level surfaces comfortably, but walk uphill for only fifteen minutes before she is in pain. (T. 166-168). These opinions do not support a finding that plaintiff has "an inability to ambulate effectively."

ability to walk" or "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device." *See* Listing 1.00B2b.

Moreover, Dr. O'Sullivan's testimony was not specific as to each of the Listing requirements, and he made no mention of whether plaintiff had the requisite inability to ambulate effectively. In addition, although he was given the opportunity to do so, plaintiff's representative did not question Dr. O'Sullivan any further at the hearing about the basis for his opinion that plaintiff met Listing 1.04(C). It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements. The only evidence in the record, however, to support such a finding is Dr. O'Sullivan's conclusory statement that she "seems to meet" the Listing. Considering the overwhelming evidence in the record that plaintiff can ambulate effectively, Dr. O'Sullivan's testimony is insufficient evidence that plaintiff is disabled. The ALJ, therefore, made no error when he concluded at step 3 that plaintiff's impairments neither met nor equaled a Listing.

**V.     Residual Functional Capacity**

I also conclude that the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence. The ALJ concluded that between April 6, 2000 and July 10, 2001, plaintiff could lift/carry 10 pounds, sit for six hours and stand/walk for two hours in an eight-hour workday, provided that she could sit and stand at will. He also concluded that she could do no repetitive bending, had frequent limitations in stooping and crawling, and occasional limitations in reaching in all directions, pushing, and pulling with her left arm. In reaching this conclusion, the ALJ cited several medical opinions of plaintiff's treating and examining physicians as the basis of his determination. (T. 22). The ALJ's RFC analysis is consistent with and supported by substantial evidence in the record, including the medical evidence summarized in the Commissioner's Memorandum of Law (Dkt. #6) at pages 7-10.

Plaintiff does not take issue so much with the specific limitations of function found by the ALJ. Rather, she complains that, as evidenced by the opinions of her treating and examining

- 7 -

physicians, as well as her own testimony, she is able to perform these functions on a part-time basis only. At most, she can work 25 hours a week at the capacities set forth by the ALJ. Plaintiff argues that the ALJ ignored this important limitation when assessing her RFC. To support her argument, plaintiff cites Social Security Ruling ("SSR") 96-8, which states that "[i]n assessing RFC, the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.* 8 hours a day, for 5 days a week, or an equivalent work schedule)." *See* SSR 96-8, 1996 WL 374184, at *2 (S.S.A.).

Plaintiff, however, overlooks an important footnote annexed at end of this sentence which provides that "[t]he ability to work 8 hours a day for 5 days a week *is not always required when evaluating an individual's ability to do past relevant work at step 4* of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the last 15 years, and lasted long enough for the person to learn to do it constitutes past relevant work, and an individual who retains the RFC to perform such work *must be found not disabled*." *See id.* at n.2 (emphasis added). There is no error, therefore, in the ALJ's RFC finding. *Wright v. Sullivan*, 900 F.2d 675, 679 (3d Cir.1990) ("We do not understand why a person who is able to do gainful remunerative work for a significant portion of a day should be regarded as disabled, for numerous jobs exist in the economy which require less than a full workday."); *Gadsen v. Chater*, No. 96-3103, 1997 WL 34659 (E.D.Pa. 1997) (restriction that plaintiff could work only part-time was consistent with ALJ's determination that plaintiff was not disabled because she could perform light or sedentary work).

**VI.    Past Relevant Work**

Plaintiff next argues that her part-time receptionist position does not constitute "past" relevant work for the period of alleged disability between April 6, 2000 and July 10, 2001, because she had not yet started working in that position. Plaintiff began working on July 11, 2001 as a part-time receptionist and continued in that position through the date of the ALJ's decision in August of 2003.

Although there is a certain logic to the plaintiff's argument about what is "past" relevant work, the Commissioner's regulations and rulings are to the contrary. 20 C.F.R. § 404.1560(b)(1) states that "[p]ast relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." SSR 82-62 provides in pertinent part that past relevant work is work that was "performed 15 years or more *prior to the time of adjudication of the claim* (or 15 years or more prior to the date the title II disability insured status requirement was last met, if earlier)." *See* SSR 82-62, 1982 WL 31386, *2 (S.S.A.). It goes on to state that "[w]hen deciding whether a claimant is disabled under title II or title XVI, the 15-year period is generally the 15 years *prior to the time of adjudication* at the initial, reconsideration or higher appellate level." *Id.* at *1 (emphasis added); *see also Melville*, 198 F.3d at 52 (part-time work that is "substantial gainful activity" can constitute past relevant work at step four).

Here, the 15-year retrospective period began on the date of the ALJ's decision, August 27, 2003.[4] By that time, plaintiff had been working as a part-time receptionist for the Town of Geneva for over two years. Plaintiff does not dispute that, based on the earnings she made in 2001 and 2002, that job is considered "substantial gainful activity" within the meaning of the regulations. *See* 20 C.F.R. §§ 404.1572(a); 404.1574(b)(2). Accordingly, the ALJ committed no legal error when he determined that, despite her severe impairments, plaintiff was not disabled at step four because she could perform her past relevant work as a part-time receptionist. Moreover, the determination is based on substantial evidence, including the testimony of a vocational expert. The vocational expert testified that with the limitations set forth in the ALJ's RFC analysis, plaintiff could perform her past relevant work as a receptionist, as that work was actually performed by plaintiff, which includes a limitation to part-time hours. *See* 20 C.F.R. § 404.1560(b)(2) ("a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with

---

[4] Plaintiff met the nondisability requirements set forth in Section 216(I) of the Act and was insured for Title II disability benefits through the date of the ALJ's decision. (T. 110-17). Therefore, the date of adjudication is the proper date from which to measure the 15-year period.

the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, *either as the claimant actually performed it* or as generally performed in the national economy.").

Lastly, I disagree with plaintiff's conclusion that the ALJ erred in assessing plaintiff's credibility. It is well within the discretion of the Commissioner to evaluate the credibility of plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence. *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir.1984); SSR 96-7p, 1996 WL 374186 (S.S.A.). Because the ALJ's credibility analysis and factual findings are based on application of the proper legal principles, the Court may not examine the evidence and substitute its own judgment for that of the Commissioner. 42 U.S.C. § 405(g); *Parker v. Harris*, 626 F.2d 225 (1980); *see also Glaze v. Barnhart*, 242 F.Supp.2d 233, 236 (W.D.N.Y.2003).[5]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #6) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. #4) is denied. This action is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 31, 2006.

---

[5] In light of the fact that I find that the ALJ properly concluded that plaintiff was not disabled prior to July 11, 2001, I need to consider whether she was entitled to a trial work period from July 11, 2001 through April 11, 2002. *See* 20 C.F.R. § 404.1592(a). Eligibility for a trial work period presumes entitlement to disability insurance benefits for a period of time. Because plaintiff is not entitled to disability insurance benefits for any period at issue here, the arguments raised by plaintiff regarding a trial work period are moot.